## No. 11,407.

ARTHUR S. WHEELER VS. BOARD OF FIRE COMMISSIONERS ET AL.

1. The " veterinary surgeon " mentioned in Sec. 6 of the ordinance creating a paid fire department for the city of New Orleans is an officer of the department and holds his office during good behavior.
2. The Board of Commissioners was absolutely without power or authority to displace a veterinary surgeon who had been elected and qualified and was in the discharge of his duties as such by the election of another person, the officer having not resigned or been impeached. Such election was absolutely null, carrying with it no legal effects.
3. The officer attempted to be displaced through such an election by the board was authorized to ask and the court justified in granting an injunction in his favor restraining the newly elected surgeon, the Board of Commissioners and the chief of the department from interfering with him in the performance of his duties.

APPEAL from the Civil District Court, Parish of Orleans.
    *Ellis, J.*

*F. C. Zacharie* for Plaintiff and Appellee:

A *de facto* officer is entitled to an injunction to prevent interference with him in the discharge of the duties of his office, by a rival claimant, until such time as the title *de jure* to the office shall have been judicially determined in a proper proceeding.   High on Injunctions, Sec. 1315, 2d Ed. ; 41 An. 333; 43 An. 83; the Callan case, 45 An., 673, does not contravene the principle; Callan was not a *de facto* officer.

"Two persons can not be *de facto* officers for the same office, at the same time." 15 Oregon, 456; 3 Am. St. Rep. 176; 19 Nev. 312; 8 Kan. 442; 10 Paige (N. Y.) 432; 22 Barb. (N. Y.) 80; 15 How. Pr. (N. Y.) 1470.

A *de facto* officer must be publicly and generally acknowledged and accepted as such; it requires general reputation as such to constitute the *de facto* quality and *status*. Am. and Eng. Enc. of Law, Vol. 19, p. 394; *Ib.*, Vol. 5, p. 92.

---

*E. A. O'Sullivan*, City Attorney, *Henry Renshaw*, Assistant City Attorney, and *Lawrence O'Donnell* for Defendant and Appellant:

Proceedings by injunction can not be used to determine disputed title to office. 41 An. 333; 43 An. 83; 45 An. 673.

Injunction will be denied when the acts to be enjoined have been committed, the purpose of an injunction, in the matter of the discharge of functions in a public position, being to prevent and not to correct wrongs. 45 An. 673.

*Qui tacet consentire videtur.*

---

The opinion of the court was delivered by

NICHOLLS, C. J. What is known as the fire department of the city of New Orleans owes its origin to the ordinance of the city of New Orleans which bears the number 5614.

The general control and administration of the affairs of the department is entrusted to a board designated as the "Board of Fire Commissioners of the City of New Orleans."

The powers, rights, duties and obligations of the board are set forth in the ordinance creating it.

Section 5 of the ordinance declares that the commissioners shall appoint all the officers and employés of the department, and Sec. 6 that the said board shall appoint as many assistant engineers, firemen * * * and other employés as may be requisite, *also one veterinary surgeon*. The 28th section of the ordinance is that upon which both parties to this litigation rely. It is as follows: "All officers and men of the department shall hold office during good behavior up to the age limits of sixty-five years, and shall only be deprived of office and position after impeachment and conviction by the commissioners."

The plaintiff herein was duly elected "veterinary surgeon" of the fire department on November 13, 1891, and qualified and entered upon the discharge of his duties as such. It is not pretended that he has resigned or been either removed or impeached. On the 12th of January, 1893, the Board of Commissioners elected John J. Morice to the position of veterinary surgeon. On the 14th of January, 1893, upon the petition of the plaintiff, an injunction issued enjoining and restraining the Board of Commissioners and Morice from any action interfering with or infringing on the plaintiff's rights of discharging the duties and receiving the emoluments of the said office until such time as the disputed right to said office should be judicially determined. Plaintiff in the petition upon which this injunction issued set forth his election and qualification as veterinary surgeon, his continued possession and incumbency of the office, the terms and tenure of the office and the powers and duties of the board. He also set forth the action of the board in attempting to replace him by the election of Morice, and declared this action illegal and unwarranted.

He averred that the Board of Fire Commissioners and Morice (the latter claiming title to the office by virtue of the election mentioned) and Thomas O'Connor, chief of the fire department, were seeking to impede, interfere and obstruct him in the discharge of the duties and functions of his office and receiving the emoluments thereof, and that he feared that Morice would seek and obtain recognition as veterinary surgeon unless all parties should be restrained by injunction. He prayed that an injunction issue, and after citation and hearing that it be ultimately perpetuated, restraining the Board, Morice and O'Connor from any action interfering with or infringing upon his right of discharging the duties and receiving the emoluments of the said office until such time as the disputed right to said office shall be judicially determined.

A motion to dissolve the injunction, as having been illegally issued (as the averments of the petition did not warrant it), and an exception dismissing the suit as disclosing no cause of action, were successively filed by the defendants and overruled by the court. They then answered, first pleading the general issue, and further answering averred that Morice was duly elected under the ordinance; that he had immediately thereafter entered upon the discharge of the duties of the office and was in the performance of the same at the date the injunction was taken out; that he was pre-

vented by the injunction from continuing to perform said duties, and that from the date of his election he had been and was still the sole and actual incumbent and *de jure* and *de facto* holder of the office. The District Court rendered judgment in favor of the plaintiff as prayed for by him, and defendants have appealed.

Only two questions are really before us:

1. Is the veterinary surgeon of the fire department of the city of New Orleans to be classed as one of the officers and men of the department?

2. If he is, did his displacement by the board in manner and form and under the circumstances as shown by the record authorize him to take and justify him in taking out the injunction which he did and when he did?

Defendants do not allude at all in their brief to the first point, and their contention in respect to it in argument was so clearly without foundation as to require no special or extended discussion. The veterinary surgeon is unquestionably an officer of the department. There is no basis whatever upon which to attempt to draw a distinction between him and the assistant engineers, the foremen and the other persons mentioned together in the sixth section.

The effect of our so holding is to bring the court at once to the consideration of the second question, for it is not claimed that the plaintiff has resigned, or been either removed or impeached, or that (assuming him to be an officer) the board had any power or authority to elect a person in his place.

The whole case of the defendants rests upon the incorrect premise that the plaintiff was connected with the defendant by a mere " *assignment to duty* " from which he could at any time be "*relieved*" by the board.

The board was absolutely without power or authority to so relieve him at will, he holding his office by a fixed tenure during good behavior, and as resulting from this fact its action in electing Dr. Morice in his place was an absolute nullity, carrying with it no legal effect whatever. It is claimed that the plaintiff was present when that action took place, that his name was placed in nomination as a candidate in opposition to Morice, that he made no protest, but acquiesced in the situation until his defeat. There is nothing going to show that plaintiff's name as a candidate was presented by his authorization. He was not called on to interfere with the pro-

ceedings of the board even had he been at liberty to have done so. He could safely rest on his legal rights.

The situation and position of no one was injuriously affected by his course. There is no estoppel in the premises.

The case of Callan vs. Board of Fire Commissioners, 45 An. 673, relied on by the defendant, bears no resemblance to the present. The plaintiff in that case did not pretend in his pleadings to have been at any time an elected officer; his utmost claim was that he was " acting " as an officer, which is something other and very different from " being " an officer.

Finding that plaintiff was elected and qualified as an officer in an office the tenure of which is during good behavior; that he was actually in the discharge of his duties as such officer; that he had not resigned nor been impeached; that any attempt by the board to displace him by the election of another person was done absolutely without power or authority, and that his attempted displacement was an absolute nullity; finding that in the petition presented in this case plaintiff, by pleadings containing not merely conclusions of law but recitals of fact, supported by documents annexed, shows affirmatively to the court both the absolute character of his own rights and the absolute want of power and authority of the Board of Commissioners in the premises; finding also that this litigation is limited to the ascertainment of the conflicting claims of the two veterinary surgeons themselves and that no question arises as to the effect upon third parties of any act done by Dr. Morice as being the act of a *de facto* officer, we are of the opinion that the plaintiff was justified in asking and the court warranted in granting the injunction which issued in this case.

We recognize that injunctions of this character should be granted only after the most careful examination by the judge to whom application for the same is made, inasmuch as there is danger of the judiciary being made to temporarily trench unintentionally upon powers legally committed to other departments of the government, or to special persons or tribunals, and inasmuch as public as well as private interests are almost necessarily more or less concerned in such proceedings.

If district judges would refrain from action until applicants should so frame their pleadings by recital of the facts on both sides, and until they should so support them by documents annexed as to clearly

satisfy them that the injunction if issued would be well taken, and if they would bring to bear before action their judicial knowledge (if such they have) of certain facts bearing on the particular case instead of granting injunctions as a matter of course upon pleadings reciting mere conclusions of law (skilfully prepared to suppress such portions of the facts of the case as if known would bar the remedy), instead of acting as a matter of course upon the assumption (false in most instances) that the injunction bond would fully and thoroughly protect and secure all interests at stake, the remedy by injunction in cases like the present would be conservative in its effects.    The danger rests not in the remedy but in the carelessness or indifference of judges.

We are of opinion that the judgment appealed from is correct, and it is therefore affirmed.