New York Central & Hudson River Railroad Company, Lessee of the Dunkirk and Allegheny Valley Railroad, Appellant, *v.* The Warren Street Railway Company.

*Railroads—Grade crossings—Electric railways—Act of June 19, 1871.*

A grade crossing of a railroad by an electric railway will not be authorized where it appears that there is no physical obstacle to the erection of an overhead crossing; that the cost of the erection of such crossing would not be more than $2,500, and that there are no adjoining owners whose property would be interfered with by such a crossing.

Argued May 2, 1898. Appeal, No. 311, Jan. T., 1897, by plaintiff, from decree of C. P. Warren Co., Sept. T., 1897, No. 9, on bill in equity. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Reversed.

Bill in equity for an injunction.

NOYES, P. J., found the facts to be as follows:

The Warren Street Railway Company is constructing a railway intended to be operated by electricity along Market street in the borough of Warren, and the Warren and Jamestown turnpike, which is the extension of Market street in the township of Conewango, to the village of North Warren, and intend, unless prevented, to cross the plaintiff's railroad at grade where it is crossed by the highway before referred to.

In response to the requests on the part of the plaintiff, I find the following facts: ·

1. The crossing proposed to be made by the defendant, at grade, is at a point where there is a grade on the plaintiff's railroad of twenty-three to twenty-six feet to the mile, descending

towards the crossing from the north and extending for a short distance beyond the crossing, when the grade is level for 300 or 400 feet, and then ascends toward the south by the grades varying from twenty-five to fifty feet to the mile until within the borough lines.

2. On account of the said grades, both north and south of the crossing, it is necessary for heavy trains to run at a high rate of speed past the crossing in order to ascend the elevation in either direction.

3. The distance required to stop an ordinary freight train approaching said crossing, at the rate of speed necessary to ascend the elevation to the northward, is from 1,200 to 1,400 feet, and to the southward from 1,500 to 2,500 feet.

4. An engineer on a northbound train could not see both rails at the crossing until he was within about 600 feet.

5. Persons standing in the highway 150 feet northerly from the center of the plaintiff's track, and looking northward, can see about 335 feet up the track of the said railroad, and southerly about 300 feet down said track; from a point 100 feet northerly from the center of said track, a person looking northward can see about 600 feet up said track, and southward about 150 feet down said track, unless prevented by cars standing on the siding.

6. Persons standing in the highway at a point 100 feet southward from the center of the railroad track can see a distance of about 128 feet southerly down said track, and 550 feet northerly up said track; at a point fifty feet south of the center of the said railroad track about the same distance can be seen to the southward and about 157 feet to the northward; but none of these positions is favorable for observation on account of the intervening buildings and other obstructions. . . .

8. I find as requested in the defendant's first proposition, that the track of the defendant company is built along the highway leading from Warren to North Warren, from the northern limits of Warren borough to a point about 250 feet from the proposed crossing, at a distance from the plaintiff company's track of from 107 to 200 feet, for a distance of about 5,000 feet; and the tracks of the plaintiff company can be seen from a car passing along its tracks, except as the view is occasionally obstructed by houses or trees, and the presence of a train upon the plaintiff company's track from the borough line

northward to the crossing would ordinarily be known to persons upon a street car for the whole of the distance above mentioned.

9. As requested in defendant's second proposition, that the track of the defendant company, approaching the crossing from the northward, would practically parallel the track of the plaintiff company from North Warren to the crossing in question, the distance of upwards of half a mile, and a train approaching the crossing from the northward on the plaintiff's road could be seen from the car of the defendant company for all except a few rods of the distance from North Warren to the crossing.

10. As requested in defendant's third, fourth, fifth and sixth propositions, a person standing upon the railroad track at the crossing could see a train approaching from the northward for a distance of about 942 feet to 944 feet, and from the southward, with the switches all filled, from 1,793 to 1,795 feet. A person standing in the center of the highway at a point twenty feet westerly from the center of the railway track and looking northward, could see a train approaching at a distance of about 968 feet, and could also see it at a point about a quarter of a mile further north. Looking southward from this point a train could be seen over 2,000 feet, or at the southern end of the Ellis switch.

11. As requested in plaintiff's eighth, ninth and tenth propositions, I find that the public highway at the point of the proposed crossing is fifty feet wide; that for the construction of an overhead crossing or bridge by the defendant it would be necessary to occupy about twelve feet in width of the said highway; and that such a crossing could be constructed with a reasonable grade, and, if constructed according to the plans submitted by the plaintiff, at a cost not exceeding $2,500. But I am of opinion that the plan so submitted is not practicable in any event, as it terminates at the bridge over the Jackson run and would render that bridge useless for public travel. In my opinion any crossing constructed over the railroad, would necessarily have to extend far enough north to cross the run, which would involve additional cost, the amount of which I am unable to determine.

The court entered the following decree:

And now July 19, 1897, this cause came on to be heard upon

the issue joined and the court having heard the evidence and the arguments of counsel, and having duly considered the same, it is now ordered, adjudged and decreed:

1. It is not reasonably practicable to avoid a crossing of the plaintiff's road by the track of the defendant at grade.

2. The injunction heretofore issued be dissolved so far as to permit the defendant to put in a standard jump crossing, properly constructed upon reasonable notice to the plaintiff and under the supervision of its engineer or supervisor, and to go over the plaintiff's tracks thereon with its electric cars, subject to the regulations and conditions specified in this decree.

3. The defendant shall at all times keep the crossing in perfect order and repair, and if it fails to do so it may be done by the plaintiff at the expense of the defendant.

4. No electric car shall be permitted to pass over the crossing unless the apparatus for propelling and controlling the same is in good working order.

5. Before passing over the plaintiff's tracks every electric car shall come to a full stop, not more than thirty nor less than ten feet distant therefrom, and shall not advance until one of the persons in charge shall have looked and listened carefully for approaching trains from the center of the track or at any other point within twenty feet, at which a longer view up and down the same can be obtained, and if a train be seen approaching the car shall wait until it passes.

6. The defendant shall, before the injunction is dissolved, and as a condition thereto, enter into a bond with surety to be approved by the court, in the sum of $1,000, conditioned that it will in all respects comply with this decree and indemnify the plaintiff in the premises.

7. The costs of this proceeding be paid by the defendant.


*Error assigned* among others was the decree of the court.


*Samuel G. Allen*, of *Allen & Sons*, for appellant.—Under the Act of June 19, 1871, P. L. 1360, if the proposed crossing is a dangerous one, and it is reasonably practicable to do so, an overhead crossing must be made. This applies as well to crossings of railroads by street railroads as to crossings of railroads by other railroads: Extension Co. v. R. R., 150 Pa. 193; Penna.

R. R. v. Braddock Electric Ry., 152 Pa. 116 ; Traction Co. v. Canal Co., 180 Pa. 636.

*W. E. Rice,* with him *W. D. Hinckley,* for appellee.

OPINION BY MR. JUSTICE GREEN, October 17, 1898 :

This is a bill for an injunction to restrain the defendant company from crossing the tracks of the plaintiff's railroad at grade with their electric railway tracks. The bill was dismissed by the learned court below upon the ground that it was not reasonably practicable to erect an overhead crossing, and therefore a grade crossing was allowed. In an opinion we have just filed in the case of The Pennsylvania Railroad Company, Lessee, v. The Warren Street Railway Co., the present defendant, ante, p. 74, we have expressed fully our views upon all the contentions which arise in the present case. There is no kind of physical obstacle to the erection of an overhead crossing. The cost of its erection was proved to be not more than $2,500. There are no adjoining owners whose property will be interfered with. There are special reasons why there should not be a grade crossing at this place in consequence of the grades of the plaintiff's railroad on each side of the crossing, and we are quite unable to agree with the learned court below as to the sufficiency of the reasons assigned for granting the grade crossing. There is much less force in the contentions for a grade crossing in the present case than there was in the case referred to. We think them to be quite without merit, and in clear hostility with all our recent decisions upon this subject. We are clearly of opinion that a grade crossing should have been refused. Without considering the numerous assignments of error in detail it is only necessary to say that we are of opinion on all the testimony that it is reasonably practicable to erect an overhead crossing at the place in question and that it was error in the court below to hold the contrary and to allow a grade crossing.

The decree of the court below is reversed at the cost of the appellee and it is now ordered that the Warren Street Railway Co. be perpetually enjoined from crossing the tracks of the New York Central and Hudson River Railroad Co. at grade.